IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 21-cv-03196-NYW-SBP

CLARK'S CHERRY VILLA'S CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY, and
JOHN DOES 1–5,

    Defendants.

## ORDER ON MOTION TO DISMISS

This matter comes before the Court on the Motion to Dismiss Second Amended Complaint ("Motion to Dismiss" or "Motion"), [Doc. 63, filed February 23, 2023], filed by Defendant Scottsdale Insurance Company ("Defendant" or "Scottsdale"). Plaintiff Clark's Cherry Villa's Condominium Association, Inc. ("Plaintiff") has filed a brief in opposition ("Response"), [Doc. 74], and Defendant has submitted a Reply, [Doc. 76]. The Court has reviewed the briefing on the Motion and the applicable law, and concludes that oral argument would not materially assist in the resolution of this matter. For the reasons discussed below, the Court respectfully **GRANTS** the Motion and **DISMISSES without prejudice** all claims against Scottsdale.

## BACKGROUND

The following factual background is based on the allegations in the Second Amended Complaint, [Doc. 55, filed November 28, 2023], which are taken as true for the purposes of this instant Motion, as well as the Statements of Facts in the Motion to Dismiss and Response, [Doc. 63 at 4–5; Doc. 74 at 3–4], and Plaintiff's Statement of Additional Undisputed Facts, [Doc. 74 at

4].[1]  Plaintiff is a Colorado nonprofit corporation.  [Doc. 55 at ¶ 1; Doc. 63 at ¶ 1; Doc. 74 at 3, ¶ 1].  In November 2017, Defendant issued Plaintiff a $1,000,000 property and bodily injury insurance policy covering property in Greenwood Village, Colorado ("Policy"), including 9263 East Chenango Avenue ("Property").  [Doc. 55 at ¶ 10; Doc. 63 at ¶ 2; Doc. 74 at 3, ¶ 2].  In September 2018, several individuals vandalized the Property and were later arrested.  [Doc. 55 at ¶¶ 11–12; Doc. 63 at ¶ 3; Doc. 74 at 3, ¶ 3].  At this time, the Policy was in effect.  [Doc. 55 at ¶ 11].

Plaintiff reported the incident to Defendant pursuant to the Policy.  [*Id.* at ¶ 13; Doc. 63 at ¶ 4; Doc. 74 at 3, ¶ 4].  On November 30, 2018, a representative of Defendant[2] valued the repair costs at $14,421.91 and tendered Plaintiff a check for $13,421.91.  [Doc. 55 at ¶ 14; Doc. 63 at ¶ 5; Doc. 74 at 3, ¶ 5].  Plaintiff did not cash the check or otherwise accept the offer of payment.  [Doc. 55 at ¶ 14; Doc. 74 at 3, ¶ 5].  Instead, on December 28, 2018, Plaintiff informed Defendant "that the settlement proposed by the adjuster for Scottsdale was not acceptable and that [Plaintiff] was getting [its] own estimate to use as a point of discussion."  [Doc. 55 at ¶ 15]; *see also* [Doc. 63 at ¶ 6; Doc. 74 at 3, ¶ 6].

Meanwhile, criminal proceedings against the Property's vandals presented the possibility that Plaintiff would receive restitution payments.  [Doc. 55 at ¶ 16; Doc. 74 at 4, ¶ 1].  However, Defendant's claims specialist Kris Breton ("Ms. Breton") advised the Greenwood Village Police ("GVP") that Plaintiff was paid $13,421.91,[3] despite Plaintiff refusing that offer as insufficient.

---

[1] In its Reply, Defendant does not respond to Plaintiff's Statement of Additional Undisputed Facts. *See generally* [Doc. 76].

[2] The Second Amended Complaint refers to both "Doug Meyer" and "Dave Meyer."  *See* [Doc. 55 at ¶¶ 14–15].  It is unclear if they are the same individual or, if so, which name is correct.

[3] Defendant attached a letter dated March 4, 2019, to its Reply, arguing that the Court may consider the letter in deciding the Motion to Dismiss without converting it into a motion for summary judgment.  *See* [Doc. 76 at 4–5 n. 1]; *see also* [Doc. 76-1].  The document appears to be consistent

[Doc. 55 at ¶ 17; Doc. 63 at ¶ 7; Doc. 74 at 3, ¶ 7]. Plaintiff alleges that Defendant's false statement prevented Plaintiff from recovering restitution through the criminal action. [Doc. 55 at ¶ 18; Doc. 74 at 4, ¶ 2].

Plaintiff ultimately obtained its own estimate to repair the Property, totaling $225,594.13. [Doc. 55 at ¶ 19; Doc. 74 at 4, ¶ 3]. Drawing all inferences in Plaintiff's favor, Plaintiff alleges it provided this estimate to Defendant. *See* [Doc. 55 at ¶¶ 19–23; Doc. 74 at 4, ¶¶ 3–4]. The Second Amended Complaint does not allege when Plaintiff obtained this estimate, although it notes that, since objecting to the initial estimate in late 2018, "[n]o counteroffer has been received" from Defendant. [Doc. 55 at ¶ 20]; *see also* [Doc. 74 at 4, ¶ 4].

Plaintiff filed suit in Colorado state court on September 24, 2021, bringing state law claims for breach of contract and insurance bad faith. *See* [Doc. 4 at 2–3; Doc. 63 at ¶ 9; Doc. 74 at 4, ¶ 9]. Defendant[4] removed the action to federal court on November 29, 2021, invoking diversity jurisdiction under 28 U.S.C. § 1332. [Doc. 1]. The operative Second Amended Complaint includes three claims: bad faith breach of insurance contract ("Count I"); unreasonable denial or

---

with the Second Amended Complaint's description of a letter sent by Ms. Breton to GVP. *Compare* [Doc. 76-1] *with* [Doc. 55 at ¶ 17]. On July 25, 2023, this Court issued an Order finding that Plaintiff did not receive an opportunity to challenge the authenticity of the letter because it was first submitted alongside Defendant's Reply. *See* [Doc. 77]; *see also Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) (noting that a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" (quotation omitted)). The Court granted Plaintiff leave to file a sur-reply addressing the letter's authenticity by August 1, 2023. The Court cautioned that, "[i]f Plaintiff [did] not timely file a sur-reply, it shall be deemed to have admitted the authenticity of the [l]etter." [Doc. 77]. As Plaintiff has not disputed the letter's authenticity in any sur-reply, it is deemed admitted. *See Cnty. of Santa Fe*, 311 F.3d at 1035.

[4] The original Complaint [Doc. 4] named Nationwide Mutual Insurance Company ("Nationwide"), omitting Scottsdale. [*Id.* at 1]. In removing the action, Nationwide represented that the "proper defendant" was, in fact, Scottsdale. [Doc. 1 at 1 n.1]. On November 8, 2022, the Court adopted the Recommendation of the Honorable Michael E. Hegarty, [Doc. 47], on a prior motion to dismiss and permitted Plaintiff to file the Second Amended Complaint, which substitutes Scottsdale for Nationwide. *See* [Doc. 51]; *see also* [Doc. 55 at 1].

3

delay of insurance benefits in violation of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 ("Count II"); and declaratory judgment pursuant to the Colorado Rules of Civil Procedure ("Count III"). [Doc. 55 at 4–7]. Defendant has moved to dismiss the Second Amended Complaint, [Doc. 63], and its Motion is ripe for resolution.[5]

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible"). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

---

[5] Discovery has been stayed pending the Court's adjudication of the Motion. [Doc. 68].

4

## ANALYSIS

Defendant argues that the Second Amended Complaint is barred in its entirety by the applicable statute of limitations and should be dismissed.[6] *See* [Doc. 63 at 5]; *see also Montana v. Hargett*, No. 07-cv-00545-CMA-KLM, 2008 WL 4964717, at *3 (D. Colo. Nov. 17, 2008) ("Fed. R. Civ. P. 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with a limitations period." (quotation omitted)). Separately, Defendant argues that Counts I and II fail to state a claim for relief under applicable law. *See* [Doc. 63 at 5–11]. Defendant also suggests that Plaintiff's declaratory judgment claim should be dismissed because of the absence of a fiduciary relationship. *See* [*id.* at 11]. For the reasons that follow, the Court respectfully **GRANTS** the Motion with respect to the statute of limitations, insofar as Counts I–III arise from Defendant's failure to pay for any amount over $13,421.91.[7]

### I.   Statute of Limitations

Although the statute of limitations is an affirmative defense, the Court may dismiss a complaint under Rule 12(b)(6) when "the dates given in the complaint make clear that the right sued upon has been extinguished." *Colby v. Herrick*, 849 F.3d 1273, 1279 (10th Cir. 2017) (quotation omitted); *but cf. Ghailani v. Sessions*, 859 F.3d 1295, 1306 (10th Cir. 2017) (stating a

---

[6] The Motion to Dismiss specifically references Counts I and II. *See* [Doc. 63 at 5 ("Plaintiff's claims for both common law bad faith and statutory violation are barred by the applicable two-year statute of limitations.")]. However, Plaintiff also refers several times to the statute of limitations compelling dismissal of the entire Second Amended Complaint, *see* [*id.*], and all Plaintiff's claims are closely related, so the Court takes the argument as corresponding to Count III as well.

[7] Because the Court finds that the statute of limitations is dispositive, it need not reach Defendant's other arguments for dismissal. Additionally, the Court need not consider the extent to which Plaintiff's declaratory judgment claim relies on C.R.C.P. 57, which may not be applicable in the exercise of this Court's diversity jurisdiction—an issue the Parties do not brief. *Cf. Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1328 n.5 (10th Cir. 2022).

complaint need not anticipate affirmative defenses). In the Motion to Dismiss, Defendant contends that the Second Amended Complaint is subject to a two-year statute of limitations, and that Plaintiff's claims accrued by December 28, 2018, at which point Plaintiff "knew . . . that it disagreed with" Defendant's determination about the claim. [Doc. 63 at 5]; *see also* [Doc. 55 at ¶ 15 ("On 12/28/18, [Plaintiff's representative] indicated to [Defendant's representative] that the settlement proposed by the adjuster for Scottsdale was not acceptable and that he was getting his own estimate to use as a point of discussion.")].

Opposing dismissal, Plaintiff takes the legal position that the proper accrual date is "when Plaintiff received [its] own estimate of cost on repairing the [Property] demonstrating that there was a viable conflict and Scottsdale subsequently refused to discuss the claim." [Doc. 74 at 4]; *see also* [*id.* at 6 ("The moment of realization was when Plaintiff got [its] own estimate and it was so far beyond what Scottsdale was offering.")]. Plaintiff argues that the statute of limitations issue should be evaluated with respect to the "entire course of conduct of the insurer." [*Id.* at 5–6 (citing *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003))]. Plaintiff also takes the related factual position that it obtained the second estimate in "2020," so this action was timely filed in September 2021. [*Id.* at 4]. However, that assertion finds no support in the Second Amended Complaint, which does not provide any year in connection with the second estimate. *See generally* [Doc. 55]. Nor does the assertion appear in the Response's statements of fact. [Doc. 74 at 3–4]. Plaintiff instead concedes that, no later than December 28, 2018, Plaintiff's agent advised Defendant that the payment of $13,421.91 was unacceptable and that he was getting his own estimate. [*Id.* at 3, ¶ 6 (citing Doc. 55 at ¶ 15)]. Finally, Plaintiff points to Defendant's allegedly false statement to GVP, [*id.* at 5], which is likewise undated in the Second Amended Complaint. [Doc. 55].

The Court begins with the legal framework governing accrual. The Parties agree that a two-year statute of limitations applies. *See* [Doc. 63 at 5; Doc. 74 at 4]; *see also* Colo. Rev. Stat. § 13-80-102(1)(a); *Wardcraft Homes, Inc. v. Emps. Mut. Cas. Co.*, 70 F. Supp. 3d 1198, 1213 (D. Colo. 2014) (statutory claim); *Harrison v. Pinnacol Assurance*, 107 P.3d 969, 972 (Colo. App. 2004) (declaratory judgment claim). The disagreement concerns when that clock began to run. As discussed above, Plaintiff cites *Pham* for the proposition that "[b]ad faith breach of an insurance contract encompasses the entire course of conduct and is cumulative." 70 P.3d at 572; *see also* [Doc. 74 at 5–6]. However, Plaintiff omits reference to *Pham*'s preceding statement—essential and applicable here—that such a claim "accrues on the date on which both the injury and its cause are known or should have been known through the exercise of reasonable diligence." *Pham*, 70 P.3d at 571; *see also* Colo. Rev. Stat. § 13-80-108(1). Under Colorado law, that accrual test controls all Plaintiff's claims. *See Wardcraft Homes, Inc.*, 70 F. Supp. 3d at 1213 (D. Colo. 2014) (statutory claim); *Harrison*, 107 P.3d at 972–73 (declaratory judgment claim).

Defendant suggests that Plaintiff's course-of-conduct authority concerns the substance of its claims, not their accrual. *See* [Doc. 76 at 4–5]. In other words, under Defendant's view of Colorado law, the insurer's "entire course of conduct" is relevant to the merits of its good or bad faith, but not to the application of the accrual rule. *Cf. Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 970 (Colo. App. 2011) ("[A]n insurer's ongoing bad faith conduct is relevant to a common law bad faith claim, but does not result in any additional bad faith claims."). However, the Court also recognizes Colorado authority stating that "each bad faith act constitutes a separate and distinct tortious act, on which the statute of limitation begins to run anew when the plaintiff becomes aware of the injury and its cause." *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012) (quotation and alteration omitted). The Court therefore disagrees with

7

Defendant's conclusion that Plaintiff alleges just "a single act of bad faith, Scottsdale's unreasonable delay of payment." [Doc. 76 at 5]. Although the delay or denial of payment on the claim at issue constitutes a single injury subject to a single accrual point, *see Steeplechase II Condo. Assoc., Inc. v. Travelers Indem. Co.*, No. 17-cv-01273-PAB-NRN, 2018 WL 6571392, at *4–5 (D. Colo. Dec. 13, 2018), Plaintiff also alleges in the Second Amended Complaint that Defendant misrepresented the status of the claim to GVP, thereby preventing Plaintiff from receiving restitution in the related criminal proceeding. *See* [Doc. 55 at ¶¶ 17–18]. To the extent that misrepresentation may have constituted a bad faith act that effected a different injury from the dissatisfactory handling of Plaintiff's claim,[8] it figures into the Court's statute of limitations analysis.

The Court begins with Defendant's handling of Plaintiff's claim. The Court recognizes that "it can be difficult to prove exactly when a plaintiff knew or should have known of both [an] injury and its cause." *Cork v. Sentry Ins.*, 194 P.3d 422, 427 (Colo. App. 2008) (quotation omitted). However, even construed favorably toward Plaintiff, the Second Amended Complaint alleges in no uncertain terms that Plaintiff was aware of the conditions giving rise to its causes of action against Defendant more than two years prior to bringing this case. *See, e.g.*, [Doc. 55 at ¶ 15 ("On 12/28/18, [Plaintiff's representative] indicated to [Defendant's representative] that the settlement proposed by the adjuster for Scottsdale was not acceptable and that he was getting his own estimate to use as a point of discussion.")]. Specifically, the allegations indicate that Plaintiff knew both its alleged injury (underpayment on the relevant claim) and the cause of its injury (Defendant's conduct and decisions with respect to the claim) no later than December 2018. *See Pham*, 70 P.3d

---

[8] Recognizing that Defendant argues the letter is "irrelevant to Plaintiff's claims against Scottsdale and should be disregarded," [Doc. 76 at 4 n.1], the Court will assume without deciding that the allegations regarding the letter implicate the limitations analysis.

at 572. Plaintiff provides no authority, nor has the Court located any, for the proposition that the trigger is a period, rather than a point in time, continuous and coterminous with the entirety of the underlying disagreement. *See Steeplechase II Condo. Assoc., Inc.*, 2018 WL 6571392, at *5 ("[A] policyholder cannot avoid the statute of limitations by making the same argument to the insurer, triggering repeated denials, and then claim that each denial restarts the statute of limitations.").

Next, assuming that Defendant's representations to GVP are relevant, the Court notes that the Second Amended Complaint does not indicate *when* Defendant allegedly deceived the police. *See* [Doc. 55 at ¶¶ 17–18, 26]. However, Defendant's Reply attaches the letter sent by Defendant's representative, Ms. Breton, to GVP, and its authenticity is deemed admitted. *See* [Doc. 77]. The letter is dated March 4, 2019. *See* [Doc. 76-1]. The Court concludes that any claims arising out of Defendant's report to GVP, to the extent Plaintiff brings such claims, would also be untimely because Plaintiff filed this action more than two years after March 4, 2019. *See* [Doc. 4]. As all claims are subject to the same accrual framework and statute of limitations, and because all claims were filed outside the two-year limitations period, the Court concludes that the statute of limitations bars the Second Amended Complaint. The claims against Defendant are **DISMISSED without prejudice**.

## II. Doe Defendants

"[P]ursuant to Fed. R. Civ. P. 10, a caption to a complaint must include the names of all parties." *Culp v. Williams*, No. 10-cv-00886-CMA-CBS, 2011 WL 1597686, at *3 (D. Colo. Apr. 27, 2011), *aff'd*, 456 F. App'x 718 (10th Cir. 2012). The "Federal Rules of Civil Procedure do not explicitly allow the naming of fictitious or anonymous parties in a lawsuit," and for this reason, "an action may be dismissed if the defendant is not sufficiently identified to permit service of process." *Id.* (quotation omitted). And a court "should only allow claims against parties whose

names are unknown to proceed if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Pearson v. Colo. Dep't of Transp.*, No. 18-cv-02538-KLM, 2019 WL 3550208, at *4 (D. Colo. Aug. 5, 2019) (quotation omitted).

In the Second Amended Complaint, Plaintiff names five John Does as defendants ("Doe Defendants") in the caption. The only reference to the Doe Defendants in the Second Amended Complaint's body appears in the allegations about the Parties, where Plaintiff alleges that "[t]he John Doe Defendants are affiliates or subsidiaries of Scottsdale. Scottsdale has affiliates and subsidiaries that use the word 'Scottsdale' and that use the Scottsdale logo." [Doc. 55 at ¶ 3]. Indeed, the Second Amended Complaint identifies no factual allegations specific to the Doe Defendants, and does not name the Doe Defendants in any claims. *See generally* [*id.*]. Thus, Plaintiff is **ORDERED** to **SHOW CAUSE** as to why its claims against the Doe Defendants should not be dismissed without prejudice. *See Culp*, 2011 WL 1597686, at *3 (dismissing Doe defendants where the allegations against those defendants were "vague and fail[ed] to meet . . . pleading standards"); *Jensen v. Nucor Corp.*, No. 1:21-CV-00100-DAK-JCB, 2021 WL 4748453, at *2–3 (D. Utah Oct. 12, 2021) (dismissing Doe defendants where plaintiff "failed to provide any allegations relating to the Doe [d]efendants").

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) The Motion to Dismiss Second Amended Complaint [Doc. 63] is **GRANTED**;

(2) The Second Amended Complaint is **DISMISSED without prejudice** as against Defendant Scottsdale; and

10

(3) Plaintiff is **ORDERED** to **SHOW CAUSE** no later than **August 17, 2023**, as to why its claims against the Doe Defendants should not be dismissed without prejudice.

DATED: August 3, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge